May it please the Court, this case concerns a proposal that NTU put forth at the bargaining procedures in the Federal Service Labor Management Relations statute, if and only if two conditions were satisfied. Number one, if the removal was in violation of law or statute, and number two, if a Federal authority otherwise exists that can hear the probationary employee's removal case. In other words, our proposal, if incorporated into a collective bargaining agreement, would provide no new substantive rights to probationary Federal employees. The primary focus of the authority's argument in this case, and of its decision below, is that NTU's proposal conflicts with OPM's government-wide regulations in Part 315, sub Part H, as well as with 5 U.S.C. 3321. So let me explain why our proposal would not Section 801 of Part 315, sub Part H, establishes that the first year of service of an employee is the probationary period. 802 determines the length of the probationary period in crediting prior service and Federal employment, and 803 merely says that the agency should use the probationary period to determine the fitness of an employee. 804 and 805, which more get to the substance of our case, deal with the termination of probationary employees for unsatisfactory performance or misconduct. That's 804. And 805 deals with termination of four conditions arising before employment. In other words, none of these sections of Part 315, sub Part H, address the substance of our proposal. And 806 provides for appeal rights to the MSPB for employees who were removed under 804 or 805. Nothing in Part 315, sub Part H, precludes access to the negotiated grievance procedure. In other words, our proposal simply does not conflict with government-wide regulation, which is the primary focus of the Authority's argument. What do you do about the two D.C. Circuit cases that address this type of proposal? We believe that only NTEU-2 addresses a proposal that's similar to the proposal that was put forth in this case. In INS, the 1983 D.C. Circuit decision, the proposal in that case was very broad. It would give access to the negotiated grievance procedure to probationary employees for all types of removals, including those that were for misconduct or unacceptable performance. Yeah, but the language of that decision is pretty clear. It says, to allow the mere allegation of discrimination to give a discharged probationary employee access to the grievance procedure with the power of the arbitrator to order reinstatement would substantially thwart Congress's intention to allow summary termination of probationary employees. Such an exception would eviscerate Congress's intention that collective bargaining not supplement probationers' existing procedural protections. So we'd be creating a circuit split. With all due respect, I believe that's actually in the later D.C. Circuit decision, the NTEU-2 decision, and not in the court's INS decision in 1983. Well, there would be a conflict with both of them. I do not believe there would be a conflict with the court's earlier decision in INS. What about the NTEU-2 decision? We believe the NTEU-2 was wrongly decided because it was sort of an impermissible expansion. So you think it's wrongly decided? Yes. Yes, Your Honor. Well, don't we give deference to the FLRA's interpretation of negotiability? I mean, aren't our circuit precedents just absolutely clear that we're supposed to defer to the FLRA's view of negotiability? What this case is not about is, it's actually about the authority's interpretation of OPM's implementing regulations. I know, but what it seems to me you're asking us to do is not to defer to the FLRA's decision as to what proposals are negotiable in collective bargaining, and you're asking us to create a circuit split, and you're asking us essentially to overturn nearly 30 years of FLRA precedent in case law and statutory authority, which has held that probationers can't grieve statutory violations. I mean, that's an awful lot to ask a circuit court to do, to create a split not to defer to the agency's interpretation, which it's arguing before us, overturn 30 years of FLRA precedent, case law, and statutory authorization, and say that collective bargaining agreements essentially can supplant the regs and the statutes as interpreted by the relevant agency. And you can contest these statutory discharges in other ways. You can go before, in federal court, you can go before the Merit Systems Protection Board. The only thing you can't do is grieve them. There's a lot to respond to there, Your Honor. First of all... That's because there are a lot of problems. First of all, I do not believe that the authority is entitled to deference when it interprets another agency's implementing statute and regulations, and that's exactly what's going on in this case. The authorities interpreted OPM's regulations to conflict with our proposal. So they're not... We're talking about negotiability here. We're talking about whether something is negotiable in a collective... Whether your proposal, the NTEU proposal, is negotiable in a collective bargaining agreement. And that's a square question of negotiability. And our cases say deference is owed to an FLRA determination of negotiability. And that's what the FLRA is arguing here, that this proposal is not negotiable. While I agree that deference... That the authority is entitled to deference in its determinations of negotiability, if the authority relies on an unsound DC Circuit decision, as it did in NTEU... As it relied on NTEU too, if its interpretation of various statutes is unreasonable, then I don't believe their decision needs to be deferred to. But aren't we talking about the FLRA's interpretation of its own organic statute, as it relates to other federal law? There are cases that have held that the authority is not entitled to deference when it is interpreting outside of its own implementing statute. And what I'm saying is the authority's decision in this case, the sole basis for the underlying decision in this case, is the NTEU too decision. And that our proposal conflicts with Part 315 subpart H of OPM's regulations. They're not entitled to deference on that interpretation. I mean, I'm not sure why not. Because that's not their... That's OPM's regulation. Negotiability in labor-collected bargaining agreements is not part of the FLRA's area? It absolutely is under 5 U.S.C. 7117. But what they did in issuing that negotiability decision was to interpret OPM's government-wide rule of regulation. But almost every negotiability decision is going to impact some OPM regulation or some other statutory provision. I mean, these things don't exist in a complete vacuum. No, certainly not. But it's not the case that every negotiability... The ultimate question is one of negotiability. Correct. The ultimate question is one of negotiability. And in fact, if this proposal were held to be negotiable, that doesn't mean that it's going to automatically wind up in a collective bargaining agreement. As you, I'm sure, are aware, if a proposal was held to be negotiable, then we would go back to the bargaining table and we would bargain over this. And it may ultimately not end up in a collective bargaining agreement. It may end up before the Federal Services Impasses Panel. We're not... The result of today's decision is not that all of a sudden this is going to be in a collective bargaining agreement. It's just to say that, yes, this is something that the parties can negotiate over. Well, why did we create this direct circuit split here? Because we firmly believe the NTU-2 was wrongly decided. It was decided, like I said, it was decided in 1988, five years after the court's INS decision. And it relied on the earlier court's interpretation of the Congressional history, the statute's legislative history. But the legislative history of the statute goes to the issue of performance and misconduct. Our proposal would not create a route for probationary employees to appeal their removals that were based on misconduct or unacceptable performance. We do not take issue with the INS decision to the extent that it goes to poor performance and misconduct. What we're saying here is these are employees... What about the Seventh Circuit decision? Didn't the Seventh Circuit decision agree with the D.C. Circuit? No. The Seventh Circuit decision dealt with non-preference eligible accepted service employees and was actually subsequently overturned by statute in 1991. And so those non-preference eligible accepted service... Non-preference being probationary? No, Your Honor. These were, for example, attorneys or non-preference eligible accepted service employees in the Federal Service, whether they're probationary or not. So that was a category of employees and non-preference eligibles that Congress determined would not have Chapter 43 or 75 appeal right. I can find out in the OPM regulations where OPM has provided a right to grieve. Statutory violations? Well, the right to grieve is found in our statute, 5 U.S.C. 7101 at SEC. The right to grieve is in 5 U.S.C. 7121 and 5 U.S.C. 7121C actually has a very broad definition. That's a general provision. What we're talking about here are regulations that apply particularly to probationary employees. The specific generally controls the general. And a general grievance provision. Of course, you can grieve all kinds of things. You have a grievance procedure. I mean, but the specific controls the general here, and I'm not sure whether OPM or Congress ever has given this right to probation. If you look at definition of employee in our statute, as well as the definition of grievance, grievance is broadly defined as any matter that or any complaint by any employee concerning any matter relating to the employment of the employee. Now, the definition of employee under our statute excludes any number of people, such as management officials, military, for example, but does not exclude probationary employees. If Congress had wanted to exclude probationary employees, it certainly could have. Moreover, in 7121C, there is a whole laundry list of things that are included. Doesn't the statutory scheme delegate to OPM the authority to decide which procedural rights to make available to probation? 5 U.S.C. 3321, which is not part of the statute, delegates to OPM the authority to administer the probationary period. And has OPM accorded this right to grieve? OPM has not accorded the right to grieve removals that are based on poor performance or misconduct. What I'm saying is OPM's regulations, Part 315, don't even go to this issue. Well, OPM has delegated this authority by Congress. Is there any OPM regulation? They're supposed to set out the rights that probationary employees have. And is there any OPM regulation that says you may grieve these statutory violations? You can take them to the Merit Systems Protection Board, and you can take them in appropriate cases to federal court. It's not as if you are being precluded from pressing your claim in a perfectly legitimate forum. But it's a question of where you do it. And you're asking us to, as I keep saying, to clear a lot of hurdles, including 30 years of settled practice within the employment force. It's been understood that probationary employees don't have the right to grieve these things. That's been the settled practice for decades. And we're going to overturn that, overturn OPM and FLRA, create a circuit split, do all these different things. It's just, you know, I'm not a rash person. And I certainly understand that. But if you look at the language of NTU-2 and the basis for its decision being, you know, that proposal was brought forth to give access to negotiated grievance procedure to employees who had been removed in a discriminatory fashion. And if you look at the language of NTU-2, it impermissibly expands on the INS decision. INS did not go to this issue at all. And it simply is not a well-reasoned decision, which is why we're here today. With all due respect, I'm up on my time. I think Judge Boyd has a question on this. Yes. The fact of the deference issue, if their interpretation isn't entitled to deference, isn't their decision below entitled to deference, the decision they made? To the extent that the authority's decisions under Section 7117 of the statute, negotiability decisions are entitled to deference, absolutely. However, the authority's decision, the language of it is grounded in its interpretation of Part 315, subpart H, which is OPM's implementing regulations. So they're not entitled to deference in that interpretation of OPM's implementing regulations. Okay. Thank you. We've got some time remaining for reply. Mr. Hennigy. Is it Hennigy? Hennigy? May it please the Court, my name is Zachary Hennigy, and I'm here representing the Federal Labor Relations Authority. As discussed, the union here is attempting to overcome nearly 30 years of precedent. The authority, the Federal Labor Relations Authority, has consistently found that a union proposal allowing a probationary worker to grieve terminations is non-negotiable. Since 1983, when the D.C. Circuit in the INS case made its decision of returning an FLRA ruling, since that point, we've consistently found that a proposal allowing a probationary employee access to the grievance procedure is non-negotiable. Probationary employees have limited rights. They don't have the right to the grievance procedure, and they don't have the right to arbitrate terminations specifically, in the case of terminations and removals. Where do these rights, where do we start the analysis here? It starts in 7117, 5 U.S.C. 7117. There is a duty to bargain, to be sure. Agencies and unions where there's representatives must sit down, must bargain in good faith. But the first section of 7117, A1, describes limitations on that duty. An agency is not required to bargain over allowing a probationary employee access to the grievance procedure. Why? Because they don't have to, under A1, negotiate over something that's inconsistent with federal law or government-wide regulation. And here we're talking about, as you recognize, the authority decided, we're talking about what derived from 5 U.S.C. 3321, and that set up, there will be a probationary scheme. And it gave the president, through OPM, the responsibility to issue regulations. They issued those regulations, 5 CFR 315 subpart H. Specifically, 315 section 806 provides very limited rights for the probationary employee. Since the Civil Service Reform Act, 78, well before that, probationary employees didn't have any rights. After a series of changes, finally we get 806, where they're allowed minimal rights. And that's to certain discriminatory actions that are taken against them involving partisan politics or marital status. And it also involves Part C of that 806 section if the agency doesn't follow very limited notice procedures. They come out of 803 and 804, or 805, excuse me. To get to one of the central concerns here is NTU 2. The union states that NTU 2 was wrongly decided. But NTU 2 squarely rested its case on the basis of its earlier decision, INS. In that case, and I think this is missing, on page 729, quote, furthermore, we think Congress instructed OPM, not the FLRA, to implement the probationary program and provide whatever procedural protections were necessary for probationary employees. They did that in 315 subpart H. Congress provides specific rights for the probationary employee. Set up the probationary system. They gave the responsibility to OPM to then decide procedurally what they're allowed. And OPM did that. They're not allowed anything extra. I mean, the point of it is that OPM has allowed them, I guess, to grieve certain things. Can't they grieve if there's a discharge for partisan political reasons? Not grieve, Your Honor. They're allowed to go to the MSPB, the Merit Systems Protection Board. All right. So they, but they haven't allowed them to grieve. Correct. They haven't allowed them to grieve generally. Is that correct? They only allow them the certain specific rights. If there's a discrimination based on marital status, then they can go to the MSPB. If it has to do with partisan politics, go to the MSPB. If there's an issue with the limited... What can they grieve before an arbitrator? What can they grieve using the 7117 grievance procedure? If there was, regarding terminations, the DC Circuit found there isn't something they can grieve. There is what? Terminations. They would not be able to grieve terminations. But there are certain provisions and... What can they grieve? They can't grieve terminations. What can they grieve? The authority in the union cites the case where the dissenting opinion, a probationary employee brought a case and they were... The facts of the case show that they kept on grieving work schedule changes. It didn't involve a termination. They were allowed to, if provision of the collective bargaining agreement said, you know, that they get certain work schedule rights. A probationary employee could grieve something like that. Could a probationary employee grieve a change in work schedule? Yes. Under that case, it shows, it indicates... Is there an OPM regulation that specifically provides the right to grieve a change in work schedule? No, no, Your Honor. Then how does that get in there? Those are rights generally afforded to the employees under a collective bargaining agreement. The difference, the distinction here is OPM, Congress specifically set up a probationary period, meaning, at least the D.C. Circuit thinks that that means they're allowed to summarily, an agency's allowed to summarily terminate that employee. Because that's the whole meaning of probation. That's the whole meaning of probation. And the only rights that they're going to get procedurally through that 3321 is given to OPM. And OPM decided, here's the range of rights you're going to get. Congress says, we have a class of probationary employees. We want them summary, we want them subject to summary termination. And this NTEU proposal wants to turn that on its head. Correct. And essentially provide them with the rights that longer tenured employees enjoy and to make them essentially tenured employees from the get-go to the extent that you can grieve something and have an arbitrator's enforceable decision at the end of the line. And what you're saying is it almost makes them, it takes a probationary employee and it makes them a non-probationary employee. Correct, Your Honor. And the D.C. Circuit went through the analysis and looked at what Congress, how they made those distinctions. They looked at 4303 that applies to discharges for poor performance. They lay out all the rights. Tenured, I'll use the term tenured instead of probationary. Tenured employees get rights of legal representation. They get the right to a certain amount of time to get noticed before they're discharged. They get the right to put on evidence for a case. And they also- Which employees? Tenured employees. Is that what they're, tenured, yeah. Tenured. And in that section, 4303, Congress specifically excluded probationary employees from that opportunity. The same thing happened in 7513, 5 U.S.C. 7513, where adverse actions to make an agency more efficient. If an adverse action is taken against a tenured employee, they get the range of rights. And they specifically said probationary employees do not get those rights. Congress has set up a scheme. The legislative history shows that the same set of rights that tenured employees get are not to be afforded to probationary employees. They say that you're not due any deference on the determination of negotiability here. What do you say in response to that? On deference and negotiability, we absolutely have, the authority has. I think the union recognizes that. D.C. Circuit, the Third Circuit, and at least one other circuit has said that if the authority is looking at a non-statute, something outside of its statute, in this case, the OPM regs, they're going to have to show that it's sound and that it's reasonable. There's an interplay between what the authority is looking at with its statute here and it does disturb deference for negotiability issues. When it's interpreting what a separate regulation outside of the statute, then it's a situation of soundness and reasonableness. But in all of these situations, I mean, the FLRA in determining negotiability is going to very often look at OPM regulations. I mean, the two agencies sort of interlock. To a large degree, that's correct, Your Honor. I think that... You're dealing with this on a regular basis. Correct. I think the very straightforward question would be if a union made a proposal regarding, say, management rights, 7106, and that's all the authority was looking at to determine whether something was negotiable, that's within the confines of its statute, and there the full deference without any other qualification would be due to the authority. Well, the bottom line is you're looking at a negotiability question on something you do all the time. Correct. It's not a particular... I guess your basic point is that Congress has delegated this authority to OPM, and OPM has not provided in its own regulations the right to agree. That's correct. Not only did they not provide it, they provided the mechanism. Either Congress says you get these rights, or in this situation, if you're a probationary employee, they said through 3321, OPM, you define what that's going to be, and OPM did, and they didn't give more. They said here's the universe of what you're going to get, unless Congress specifically, obviously, stated that you get additional rights. For instance, federal employees' right to challenge discrimination claims through the agency, through 42 U.S.C. 2000 E-16. Probationary employees, because Congress afforded them those rights, have the right to challenge those situations. Just to touch on a couple of other points raised by the union, trying to make a distinction between INS and saying performance and misconduct issues, an agency can summarily discharge those probationary employees, and asserting something that's unlawful under a different statute. A statute was the term used in this proposal, which is a very broad term, but it's a very broad term. Broad proposal. Making that claim that there's a distinction, I think we need to look at NTU-2, where the court said a mere allegation would suddenly put those probationary employees into that universe of being able to grieve, and they could do that every time. That would eviscerate Congress's intent to limit the rights of the probationary employee. As the D.C. Circuit looked to the legislative history in the Senate report, it is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period, the probationary period. The Supreme Court echoed this language in the U.S. v. Fausto 1988 decision. Said the same thing. This is a recognized standard that agencies should have this right. They need to run efficient, effective services within their agencies, and the limits on probationary employees who challenge these terminations is clear. Just to touch on another point that the union raises in its briefs, that this is a public policy, arbitration should be allowed. I think we addressed this fairly clearly in the brief, but the two Supreme Court cases that the union cites, they're pretty far afield, and I'll leave it at that. You guys don't have any other questions? No, I think we understand your position. Thank you. The union in this case is not asking for probationary employees to have rights under Chapter 43 or Chapter 75 to challenge their removals for poor performance or misconduct. This proposal has nothing to do with poor performance or misconduct, and the federal sector employers never have the right to summarily terminate an employee, probationary or not, in violation of Title VII, the Age Discrimination and Employment Act, or if the agency has committed an unfair labor practice. What happened with the Merit Systems Protection Board and the federal court, that's what everybody else does, is if they're terminated in violation of a federal statute, they go to the EEOC and then they go to federal court. Why can't you do that? Employees who are not probationary and who are covered by negotiated grievance procedures can file grievances over their removals that violate Title VII, the Age Discrimination and Employment Act. It happens all the time. So what we're asking for is probationary. Just across the country in the private sector, you've got people who, if they are discharged, most often what they do is they go to the EEOC and they go to federal court. Here they're saying, you're not shut out of anything, it's just you go to the Merit Systems Protection Board. But in the federal sector, Congress saw fit to provide the negotiated grievance procedure route for federal employees. I understand that, but Congress also delegated this authority to OPM to set rules for probationary employees. And we've all agreed this morning that the OPM rules don't allow you to grieve these things. They just don't. It's not there. The OPM rules, the Part 315, Subpart H, deals with employee removals for poor performance or misconduct or for conditions arising prior to appointment. They don't deal with the situation where a probationary employee has been removed discriminatorily or in an unfair labor practice. The positive ground is found in our statute at 5 U.S.C. 7103 in the definitions of employee and grievance and 5 U.S.C. 7121. Because the definition of things that are grievable, the list of things that are grievable in 7121 does not exclude these types of grievances. It excludes a whole host of things. But it does not exclude grievances of probationary employees where their terminations are in violation of statute. And I would also point the Court's attention to the two earlier decisions of the Federal Labor Relations Authority that were issued prior to INS where the authorities said, yes, probationary employees can grieve these types of removals. So it's not the case that the authority has consistently held that such proposals are non-negotiable. Well, they've held that for the past 30 years. Correct. But the Court's decision in INS actually originally overturned... Didn't that come down in 1983? It did come down in 1983, yes, Your Honor. Why should we overturn 30 years of settled labor law? Our proposal here is not the proposal in INS. It's not even the proposal in NTU-2. Because in NTU-2, the language of the proposal said that probationary employees should be able to grieve their removals that were discriminatory. But what it didn't do is limit those removals, limit those grievances... We've said it's not the FLRA has said it's not negotiable. And then all of a sudden, spoof. We say that it is. With all due respect, no circuit has considered this issue since the D.C. Circuit decided it in 1988. So it's not that there's this... Because it's clear. But, you know, these things come up before the D.C. Circuit much more often than they do before any other court. So that's not particularly surprising. Um, well, we believe that we firmly believe that the D.C. Circuit was wrong in NTU-2. And the reason why is because the congressional, the statutory history is very clear. And the INS decision is replete with references to poor performance or misconduct. The INS decision and the statutory history just don't address this situation. What difference does probationary status make if they have all the rights that non-probationary employees do? I mean, presumably the probationary status means something different from a tenured, from the status of a tenured employee. Well, certainly. And if a probationary employee fails to perform, he or she could be removed and not be able to challenge that removal. All we're saying is if a federal employer... Well, this is a summary dismissal of failure to perform. And then you come back and say, well, it wasn't because of failure to perform at all. It was because of a statutory violation. And there we're off to the races and you get to grieve it. So every dismissal for failure to perform will be artfully pled to be a statutory violation. With all due respect, Your Honor, unions have to invest energy resources, time into pursuing grievances. And grievances don't get to arbitration until a union has decided that, generally speaking, it's going to have a reasonable chance of success on the merits. And even if it gets to that point, the arbitrator is bound by our proposal to apply the same law that the EEOC or the MSPB would apply. So we're not asking for the court to create any new substantive rights here. The rights already exist. What we're asking for is for the court to recognize that the negotiated grievance procedure covers these matters. Thank you. I'll ask the clerk to adjourn court and then we'll come down and recounsel.
judges: William B. Traxler Jr., J. Harvie Wilkinson III, Henry F. Floyd